COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

October 31, 2014

P. Clarkson Collins Jr., Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801

Todd Charles Schiltz, Esquire
Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801

John D. Hendershot, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Re:  *Theravectys SA v. Immune Design Corp.*
C.A. No. 9950-VCN
Date Submitted:  October 28, 2014

Dear Counsel:

Non-Party Novasep Inc. ("Novasep US") has moved for a protective order pursuant to Court of Chancery Rule 26(c).  Its motion arises in the context of litigation between Plaintiff Theravectys SA ("TVS")[1] and Defendant Immune Design Corporation ("IDC").  TVS's claims against IDC derive from Henogen

---

[1] TVS has filed a Cross-Motion to Compel that deals with the same issues as Novasep US's Motion for a Protective Order.  This letter opinion addresses arguments raised in both motions and is dispositive as to both.

SA's ("Henogen") manufacture of antiviral vectors for IDC, in violation of a services contract between Henogen and TVS.[2] TVS alleges tortious interference, unfair competition, misappropriation of trade secrets, and unjust enrichment, and seeks to establish that IDC knowingly induced Henogen to breach its contract with TVS and/or that IDC intentionally used TVS's confidential and proprietary information.

In its efforts to establish its case, TVS served Novasep US, a corporate affiliate of Henogen, with discovery requests. Novasep US and Henogen, neither of which is a party to this litigation, share a corporate parent, Novasep Holdings S.A.S. ("Novasep S.A.S."), which is headquartered in France. Novasep US is based in Pennsylvania and serves as the American sales and marketing force for its foreign affiliates, including Henogen. Based in Belgium, Henogen is a contract manufacturing organization specializing in the development and production of

---

[2] "Lentiviral vectors are gene transfer vectors derived from HIV, able to integrate the genome of dividing and non-dividing cells, allowing a stable expression of transgene in host cells and serve as biological instruments to treat or prevent all pathologies. In prophylactic and therapeutic vaccination settings, lentiviral vectors are used to induce an antigen-specific immune response to fight infectious diseases and cancers." Compl. ¶ 5.

biomolecules for third parties. Novasep US markets Henogen's services to American clients, but generally ceases its interaction with a client after the client signs an initial contract with Henogen.

Novasep US's involvement in the events underlying the TVS-IDC litigation was limited to marketing communications with IDC before IDC and Henogen entered into the Master Agreement for Development & Manufacturing Services on April 27, 2012 (the "Manufacturing Agreement"). After the Manufacturing Agreement was signed, all products created for IDC were manufactured, tested, and shipped to IDC by Henogen.

## I. TVS'S DISCOVERY REQUESTS

Novasep US objects to TVS's requests for documents related to (i) the manufacture and testing of the lentiviral vectors for IDC, (ii) the shipment of those vectors to IDC, (iii) the negotiation and formation of the Manufacturing Agreement, (iv) the litigation between TVS and IDC, and (v) Novasep US's corporate structure and relationships with its affiliates.

Novasep US argues that documents related to the manufacture, testing, and shipment of the lentiviral vectors (the "Foreign Affiliate Documents") are outside

of its possession, custody, or control. It was not involved in these processes and the Foreign Affiliate Documents are possessed and controlled by Henogen and Novasep US's other European affiliates.

Novasep US contends that even if it controlled the Foreign Affiliate Documents, French and Belgian laws prevent their production. Further, Novasep US argues that none of the categories of documents that it resists producing is relevant to TVS's claims, and their production would be unduly burdensome.

As explained below, TVS has not established Novasep US's control over the Foreign Affiliate Documents or any documents related to agreements between Henogen and IDC to cooperate with respect to litigating against TVS. Accordingly, Novasep US need not produce those documents. However, to the extent that Novasep US controls documents responsive to TVS's remaining requests, Novasep US will produce them.

A. *There is Insufficient Evidence That Novasep US Controls the Foreign Affiliate Documents*

Court of Chancery Rule 34(a) provides that a party may only request documents "which are in the possession, custody or control of the party upon

whom the request is served."[3]  The Foreign Affiliate Documents are not in Novasep US's possession or custody.  However, TVS argues that Novasep US has "control" over those documents.

"In the Rule 34 context, [c]ontrol has been defined to include the legal right to obtain the documents requested upon demand.  Thus, the key inquiry is whether the company has the power, unaided by the court, to force production of the documents."[4]  Both state and federal courts in Delaware "decline[] to apply a broader definition of 'control' that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents."[5]  Separate corporate identities are generally respected "except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary."[6]

---

[3] Ct. Ch. R. 34(a).

[4] *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, 2005 WL 1713067, at *11 (Del. Ch. July 13, 2005) (alteration in original) (internal quotation marks omitted).

[5] *Cradle IP LLC v. Tex. Instruments, Inc.*, 2013 WL 1794992, at *1 (D. Del. Apr. 29, 2013).

[6] *Id.*

The alter ego doctrine typically only applies when the use of "the corporate form in and of itself operates to serve some fraud or injustice."[7]

The strongest pieces of evidence supporting an application of the alter ego doctrine are (i) the Mutual Confidential Disclosure Agreement between IDC and Novasep US, signed January 9, 2012 (the "CDA"), and (ii) the Cooperation Agreement between Henogen (and its group companies) and IDC, dated February 13, 2014 (the "Cooperation Agreement").

Novasep US entered into the CDA "acting on its own name and behalf and on the name and behalf of its 'Affiliates.'"[8] The CDA defines Affiliates to include Henogen, as well as Novasep US's French parent, Novasep S.A.S. TVS argues that Novasep US's ability to bind its affiliates shows that the entities are intertwined and that Novasep US exercises control.

The CDA was entered into in contemplation of a potential business relationship between Henogen and IDC. As Henogen's marketing agent in the United States, Novasep US apparently had the limited power to bind its affiliates to

---

[7] *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, at *4 (Del. Ch. Mar. 4, 2004).
[8] Transmittal Aff. of Albert J. Carroll Ex. I.

the CDA. Novasep US's role is to facilitate agreements between its affiliates and clients, and the CDA was entered into before IDC and Henogen's Manufacturing Agreement. The fact that Novasep US signed the CDA on its affiliates' behalf does not prove its control over the Foreign Affiliate Documents.

The Cooperation Agreement is weaker evidence of Novasep US's control. That agreement is between IDC (and its group companies) and Henogen (and its group companies). TVS argues that, despite the lack of clarity regarding the identities of the "group companies," the Cooperation Agreement is evidence that Henogen and its affiliates, including Novasep US, are so intertwined that Henogen bound both itself and Novasep US to the agreement. This argument is unpersuasive because there is no evidence that Novasep US is bound by the Cooperation Agreement, and regardless, Henogen's ability to bind Novasep US would not support the conclusion that Novasep US has control over the Foreign Affiliate Documents and can obtain these documents on demand.[9]

---

[9] Novasep US had no involvement in the drafting or execution of the Cooperation Agreement. Decl. of Andrew Brennan in Supp. of Novasep US's Reply Br. in Supp. of its Mot. for a Protective Order ("Brennan Decl.") ¶ 9.

*Theravectys SA v. Immune Design Corp.*
C.A. No. 9950-VCN
October 31, 2014
Page 8

TVS's other arguments that Novasep US controls the Foreign Affiliate Documents are equally unpersuasive. Novasep US has rebutted the assertion that there is overlap between its directors and Novasep S.A.S.'s board.[10] The fact that Novasep US has a defined role in a broader corporate structure and interacts with its affiliates is hardly surprising, and does not support piercing the corporate veil. Novasep US's role in the events underlying this litigation continued only until Henogen and IDC signed the Manufacturing Agreement. Novasep US has its own board of directors, keeps its own books, and operates as an entity independent from its affiliates.[11] It does not, in the ordinary course of business, access or receive documents from its affiliates concerning their manufacturing, testing, or shipment of products.[12]

For the foregoing reasons, at this time, there is no evidence that the Foreign Affiliate Documents are within Novasep US's possession, custody, or control, and it is not required to produce them.

---

[10] Regardless, overlapping directors would not be sufficient to ignore the separate corporate identities of Novasep US and its affiliates.
[11] Brennan Decl. ¶ 11.
[12] *Id.* ¶ 10.

B. *Novasep US Must Produce the Requested Non-Foreign Affiliate*
   *Documents in Its Possession and Control*

Court of Chancery Rule 26 provides that a party may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[13] "[T]he standard of relevance that the court must apply is whether the discovery sought is reasonably calculated to lead to admissible evidence."[14] The Court permits a broad scope of discovery and will not allow objections to discovery requests "unless there have been clear abuses of the process which would result in great and needless expense and time consumption."[15]

1. Novasep US's Internal Marketing Communications Relating
   to the Negotiation and Formation of the Manufacturing Agreement

TVS requests production of Novasep US's internal marketing communications concerning the negotiation and formation of the Manufacturing Agreement. While Novasep US has agreed to produce its pre-contract

---

[13] Ct. Ch. R. 26(b)(1).

[14] *Prod. Res. Gp., L.L.C. v. NCT Gp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004).

[15] *Id.* (quoting *Van De Walle v. Unimation, Inc.*, 1984 WL 8270, at *1 (Del. Ch. Oct. 15, 1984)).

communications with IDC, it resists production of its internal communications. Novasep US admits that producing such documents would not be substantially burdensome or prejudicial. However, it argues that such documents are irrelevant to TVS's claims against IDC since the documents were never shared with IDC and cannot reflect IDC's knowledge or intentions.

The Manufacturing Agreement and IDC's motivation for entering into it are central components of TVS's case. Given the broad scope of allowable discovery, TVS's requests are "reasonably calculated to lead to admissible evidence." It is conceivable that Novasep US's internal documents reference IDC's knowledge of Henogen's relationship with TVS or IDC's reasons for entering into the Manufacturing Agreement. Novasep US has failed to meet its burden to show that TVS's requests for the internal marketing documents are improper, and Novasep US is directed to respond to those requests.

2. Documents Concerning the Litigation Between TVS and IDC

TVS's requests for documents related to the dispute between TVS and IDC focus on the apparent cooperation between IDC and Henogen with respect to litigating against TVS, as manifested by the February 13 Cooperation Agreement.

However, Novasep US was not involved in the creation or signing of the Cooperation Agreement, or any other similar communications or agreements.[16] Any documents regarding cooperation between IDC and Henogen are in the custody, possession, and control of Henogen or other European affiliates. These documents, like the Foreign Affiliate Documents, are outside of Novasep US's control, and it is not required to produce them.

### 3. Documents Related to Novasep US's Corporate Organization

TVS requests discovery concerning the relationships among Novasep US and its affiliates and the extent to which documents are exchanged between these entities in the regular course of business. Novasep US argues that these requests have no relevance to TVS's claims in this litigation. However, TVS explains that it requested this category of documents in anticipation of Novasep US's refusal to produce documents allegedly outside of its control. TVS has not established that the Foreign Affiliate Documents or communications related to the Cooperation Agreement are within Novasep US's control. However, TVS is entitled to discovery in its attempt to demonstrate that Novasep US's corporate structure and

---

[16] Brennan Decl. ¶ 9.

relationships with its affiliates are sufficient to bring those documents within its control. Novasep US will respond to this category of requests to the extent that it, not only its affiliates, controls responsive documents.

## II. TVS'S DEPOSITION SUBPOENA

TVS has issued a deposition subpoena that includes the same topics as its document requests. Novasep US is willing to produce an employee to testify concerning its marketing interactions with IDC during 2011 and early 2012. However, it argues that its witness should not be required to testify on matters conducted by Novasep US's foreign affiliates. As discussed *supra*, Novasep US had no involvement in the manufacturing, testing, or shipment of the products created for IDC. Novasep US also had no involvement relating to the Cooperation Agreement. Novasep US will not be required to educate a witness to testify in a manner binding on the company on matters in which it was not involved.[17]

---

[17] *See In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006) ("It is simply not comparable [to requiring document production] to require a corporate parent to acquire all of the knowledge of the subsidiary on matters in which the parent was not involved, and to testify to those matters in a manner which binds the parent, a separate legal entity.").

Nonetheless, consistent with the limits placed on the document discovery, Novasep US will produce a witness to testify regarding the negotiation and formation of the Manufacturing Agreement, as well as Novasep US's corporate structure and relationships with its affiliates.

### III.  CONCLUSION

Novasep US's Motion for a Protective Order is thus granted in part and denied in part.  Novasep US is not required to produce the Foreign Affiliate Documents, communications related to the Cooperation Agreement, or any other documents outside its possession, custody, or control, as set forth in this letter opinion.  However, Novasep US will produce documents related to its negotiation of the Manufacturing Agreement or any other involvement it had in the events underlying this litigation.  It will also produce documents describing its corporate structure and relationships with affiliates to the extent that such documents are reasonably related to TVS's efforts to establish control.  Finally, Novasep US will produce a witness to testify on the topics determined appropriate in this letter opinion.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K